UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUAN OJEDA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL,<br><br>　　　　Defendant. | Case No.  19-cv-02415-VKD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 26, 28 |

Plaintiff Juan Ojeda appeals a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 1381, et seq.  The parties have filed cross-motions for summary judgment.  Dkt. Nos. 26, 278

The matter was submitted without oral argument.  Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court denies Mr. Ojeda's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.[1]

## I.　　BACKGROUND

Mr. Ojeda seeks disability benefits beginning June 23, 2014.  AR 18.  He applied for benefits on February 18, 2016.  *Id.*  Following a hearing, the Administrative Law Judge ("ALJ") issued a decision denying benefits on March 21, 2018.  AR 18–25.  The ALJ first determined that

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 11, 17.

Mr. Ojeda remained insured through December 31, 2019.  AR 18.  The ALJ then found that Mr. Ojeda had the following medically determinable impairments: lumbar degenerative disc disease, diabetes, and hypertension.  AR 20.  The ALJ concluded that Mr. Ojeda did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, including Listing 1.04.  AR 21.  The ALJ then determined that Mr. Ojeda had the residual functional capacity to perform light work except he could stand two hours and walk two hours, with the following restrictions: lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand, or walk for six hours each in an eight-hour workday; push/pull the same weight limits; frequently reach overhead bilaterally; frequently balance and climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl.  AR 21. The ALJ concluded that Mr. Ojeda was not able to perform any past relevant work but that he was able to perform the following positions existing in significant numbers in the national economy: inspector (DOT 669-.687-014) with 13,000 jobs available nationally; electrical assembler (DOT 725.684-018) with 15,000 jobs available nationally; and sealer (DOT 559.687-014), with 15,000 jobs available nationally.  AR 25.  Therefore, the ALJ concluded, Mr. Ojeda was not disabled.  AR 25.

The Appeals Council denied Mr. Ojeda's request for review of the ALJ's decision.  AR 1–3.  Mr. Ojeda filed this action on May 3, 2019.  Dkt. No. 1.

## II.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).  In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the

United States District Court
Northern District of California

administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

In determining whether a claimant has a disability within the meaning of the Act, an ALJ follows a five-step sequential analysis:

At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If so, the claimant is not disabled. If not, the analysis proceeds to step two.

At step two, the ALJ assesses the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant has a severe medically determinable physical or mental impairment, or a combination of impairments, that is expected to last at least 12 continuous months, he is disabled. *Id.* §§ 404.1509, 404.1520(a)(4)(ii). Otherwise, the evaluation proceeds to step three.

At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Commissioner's Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If so, a conclusive presumption of disability applies. If not, the analysis proceeds to step four.

At step four, the ALJ determines whether the claimant has the residual functional capacity to perform his past work despite her limitations. *Id.* § 404.1520(a)(4)(iv). If the claimant can still perform his past work, then he is not disabled. If the claimant cannot perform his past work, then the evaluation proceeds to step five.

At the fifth and final step, the ALJ must determine whether the claimant can make an adjustment to other work, considering the claimant's residual functional capacity, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled.

The claimant bears the burden of proof at steps one through four. The Commissioner has the burden at step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

United States District Court
Northern District of California

United States District Court
Northern District of California

## III.   DISCUSSION

Mr. Ojeda contends that the ALJ erred in two respects: (1) finding that Mr. Ojeda's spine condition did not meet Listing 1.04A, and (2) failing to show that jobs existed in significant numbers in the national economy which Mr. Ojeda was capable of performing.  Dkt. No. 26-2 at 3–9.

### A.   The ALJ's Step Three Analysis

Mr. Ojeda challenges the ALJ's finding that his lumbar degenerative disc disease did not meet Listing 1.04.  Dkt. No. 26-2 at 6–9.  Mr. Ojeda bears the burden of proving that he has an impairment that meets or equals the criteria listed in the regulations.  *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment.  *See* 20 C.F.R. §§ 404.1526.  If a claimant's impairment is not listed, then the impairment will be compared to listings that are "closely analogous" to the claimant's impairment. *Id.*  "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment."  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."  *Id*.

Here, at step three of the sequential analysis, the ALJ stated that he "did not find, to the extent necessary," evidence of the conditions described in Listing 1.04.[2]  AR 21.  His opinion on whether Mr. Ojeda met Listing 1.04 consists of a single sentence.  *Id.*  Mr. Ojeda argues that this brief conclusion, consisting mostly of parroting the text of Listing 1.04, was erroneous because the ALJ did not properly evaluate the evidence and did not sufficiently explain how the evidence supported his conclusion.  Dkt. No. 26-2 at 9.  Mr. Ojeda says that he provided evidence showing that he met Listing 1.04A.  Dkt. No. 26-2 at 6–9.

Listing 1.04A requires a disorder of the spine (such as degenerative disc disease) resulting

---

[2] The ALJ's decision did not reference any particular paragraph of Listing 1.04, and the Court therefore presumes the ALJ concluded that Mr. Ojeda did not meet any of the paragraphs.  AR 21.

United States District Court
Northern District of California

in compromise of a nerve root or the spinal cord, with evidence of (1) nerve root compression characterized by (2) neuro-anatomic distribution of pain, (3) limitation of motion of the spine, (4) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, (5) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. pt. 404, Subpt. P., App. 1, § 1.04 (Dec. 15, 2017). The Commissioner contends that "[t]he ALJ's evaluation of the evidence supported his finding that Plaintiff did not meet [L]isting 1.04(A)," but does not point to any particular part of the ALJ's opinion to support that contention. Dkt. No. 28 at 3. The ALJ's opinion does not discuss any specific piece of medical evidence that relates to these criteria, with two exceptions. First, the ALJ mentions a lumbar MRI showing multilevel disc protrusion with two-level nerve impingement. AR 22. Second, the ALJ noted that on August 31, 2016, Mr. Ojeda's primary treating doctor, Sherwin Hua, M.D., observed normal gait and normal motor function. AR 22. The ALJ's opinion did not mention any evidence concerning neuro-anatomic distribution of pain, limitation of motion of the spine, sensory or reflex loss, or the results of any straight-leg raising test.

To the extent the ALJ relied on one physical exam showing normal findings to conclude the listing requirements were not met, his decision is not supported by substantial evidence. Rather, the ALJ must consider the longitudinal record to determine whether a claimant meets the duration requirement. *See* 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) *which meets the duration requirement* and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.") (emphasis added); 20 C.F.R. pt. 404, Subpt. P., App. 1, § 1.00(H)(1) ("[A] longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment unless the claim can be decided favorably on the basis of the current evidence."). "An ALJ may not cherry-pick and rely on portions of the medical record which bolster his findings." *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1207–08 (9th Cir. 2001) (holding that an ALJ may not selectively rely on some entries and ignore others "that indicate continued, severe impairment"). The ALJ therefore erred by not providing an adequate explanation of how the medical evidence of

1    record supported his conclusion that Mr. Ojeda did not meet Listing 1.04.

2          Mr. Ojeda contends that the medical evidence of record does, in fact, show that he meets

3    Listing 1.04A.  Dkt. No. 26-2 at 6–9.  In response, the Commissioner "concedes that [Mr. Ojeda]

4    had the severe impairment of lumbar degenerative disc disease" and "that there was evidence of

5    nerve root compression, etc."  Dkt. No. 28 at 2.  However, the Commissioner argues that the

6    medical evidence shows only "intermittent satisfaction of some of [L]isting 1.04(A)'s criteria but

7    not ongoing management and evaluation of all its criteria over a continuous period of at least 12

8    months" between the relevant time period of June 23, 2014 through December 16, 2016.  *Id.*

9          Having reviewed the medical evidence of record, the Court finds evidence supporting each

10   criterion of Listing 1.04A lasting for at least 12 months except for motor loss (atrophy with

11   associated muscle weakness or muscle weakness).  The record does reflect some instances of

12   muscle strength loss.  AR 407 (July 1, 2014 charting note by chiropractor Monisha Chanan, DC

13   indicating muscle strength was 5/5 in all areas, except for right hip flexor and right knee extension,

14   which were both 4/5); AR 378 (August 8, 2014 charting note by physical therapist Elmma Peña

15   DPT stating, "Pt has responded slowly to therapy and presents today with increased, though still

16   limited lumbar ROM, decrease mm strength, low tolerance to ADL's/walking, and has

17   [occasional] sharp pains"); AR 357, 345, 323 (September 3, 2014, September 17, 2014, and

18   January 7, 2015 charting notes from James Petros, MD describing motor strength (right/left) as

19   "5/5 score at iliopsoas, 5/5 quadriceps, 5/5 tibialis anterior, 4/5 extensor hallucis longus, 4/5

20   gastroc-soleus").  However, these instances are interspersed with other examinations showing

21   normal muscle strength findings.  AR 365 (August 27, 2014 charting note by physician's assistant

22   Tom Zdimal noting lower extremities demonstrating full strength and sensation); AR 348

23   (September 8, 2014 charting note by Henry Poon, MD noting same); AR 271 (September 19, 2015

24   examination report by Victoria Barber, MD stating, "Lower extremity evaluation demonstrates 5/5

25   motor strength throughout all large muscle groups and EHL. . . .").  The most recent examinations

26   of Mr. Ojeda reveal normal motor strength.   AR 317 (June 28, 2016 examination report by Satish

27   K. Sharma, MD stating that motor strength was 5/5 in all extremities, normal muscle bulk and ton,

28   and normal bilateral hand grip strength); AR 306 (July 11, 2016 treatment note by Toan Tran, MD

United States District Court
Northern District of California

6

1   stating, "Normal tones, muscle mass and ROM both active and passive"); AR 490 (August 31,

2   2016 examination report by Dr. Hua stating, "Motor and sensory examination of the upper and

3   lower extremities is normal").

4          In his motion, Mr. Ojeda principally relies on Dr. Petros's examinations for evidence of

5   motor loss, but the medical evidence of record shows that Dr. Petros only saw Mr. Ojeda between

6   September 3, 2014 and January 7, 2015—a period of four months, far short of the necessary 12

7   months.  Dkt. No. 26-2 at 8; AR 354–62, 322–26.

8          Because the record reflects that Mr. Ojeda's spine disorder did not satisfy all requirements

9   of Listing 1.04A for the necessary duration, the ALJ's error in failing to provide an adequate

10  explanation of his analysis at step three was harmless.  *Tommasetti v. Astrue*, 533. F.3d 1035,

11  1038 (9th Cir. 2008) (ALJ's error is harmless only when it is clear from the record that the error

12  was "inconsequential to the ultimate nondisability determination") (internal quotation marks and

13  citation omitted).  Accordingly, the Court denies Mr. Ojeda's motion for summary judgment and

14  grants the Commissioner's motion for summary judgment on this point.

15         **B.     The ALJ's Step Five Analysis**

16         At step five, the ALJ bears the burden of showing that Mr. Ojeda is capable of performing

17  work that exists in significant numbers in the national economy based on his residual functional

18  capacity.  20 C.F.R. § 404.1560(c)(2).  Here, the ALJ concluded that Mr. Ojeda was capable of

19  performing the following jobs existing in significant numbers in the national economy: inspector

20  (DOT 669.687-014) with 13,000 jobs available nationally; electrical assembler (DOT 725.684-

21  018) with 15,000 jobs available nationally; and sealer (DOT 559.687-014), with 15,000 jobs

22  available nationally.  AR 25.  Mr. Ojeda contends that 15,000 jobs or less per position is not

23  significant nationally, and that it is possible the number of jobs available to him is even less

24  because the ALJ did not inquire into the number of such jobs available regionally.  Dkt. No. 26-2

25  at 3–6.  The Commissioner responds that 43,000 jobs nationally across all three positions is

26  significant.  Dkt. No. 28 at 4–5.

27         The required showing of a "significant number of jobs" can be *either* regional jobs (the

28  region where a claimant resides) *or* in several regions of the country (national jobs).  42 U.S.C.

United States District Court
Northern District of California

§ 423(d)(2)(A); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  Mr. Ojeda provides no authority to support the contention that the ALJ was required to obtain information about the regional availability of jobs in addition to nationwide availability.  In fact, the case law he cites suggests the opposite.  *Compare* Dkt. No. 26-2 at 5 (citing *Beltran*, 700 F.3d at 390 and *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014)) *with Beltran*, 700 F.3d at 389 *and Gutierrez*, 740 F.3d at 528 (observing that work which exists in the national economy can be satisfied by work that exists in significant numbers in the region where the claimant lives or in several regions of the country).

Mr. Ojeda appears to suggest that each position that the ALJ concludes he could have performed must exceed 15,000 national jobs.  Dkt. No. 26-2 at 4 ("The Ninth Circuit, however, has not found a number below 15,000 jobs to constitute a significant number of jobs nationally.").  But that is not the law.  The number of jobs considered is the collective total across all identified possible positions, not each position individually.  *See, e.g.*, *Gutierrez*, 740 F.3d at 520, 528 (finding that 25,000 jobs—comprised of 15,000 assembler jobs and 10,000 almond blancher jobs collectively—constitutes a significant number of jobs); *Buckins v. Berryhill*, 706 F. App'x 380, (9th Cir. 2017) (rejecting appellant's contention that 5,104 children's attendant jobs are not significant because "[t]he total 25,904 jobs available in [all identified] occupations plus the occupation of children's attendant amount to a significant number of jobs in the national economy" based on *Gutierrez*).

Accordingly, the Court denies Mr. Ojeda's motion for summary judgment and grants the Commissioner's motion for summary judgment on this point.

## IV.   DISPOSITION

The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing."  42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014).  Based on the foregoing, Mr. Ojeda's motion for summary judgment is denied, and the Commissioner's cross-motion for summary judgment is granted.

The Clerk of the Court shall enter judgment accordingly and close the file.

United States District Court
Northern District of California

1

**IT IS SO ORDERED.**

2    Dated: October 7, 2020

3

4

5    VIRGINIA K. DEMARCHI
United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California